**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JILL S.,**[1] | ) | |
| | ) | **No. 21 CV 2485** |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **MARTIN J. O'MALLEY,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | **May 21, 2024** |
| **Defendant.** | ) | |

**MEMORANDUM OPINION and ORDER**

Jill S. seeks disability insurance benefits ("DIB") asserting she is disabled by depression, bipolar disorder, and multiple sclerosis ("MS"). She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for benefits. For the following reasons, Jill's remand request is denied, and the Commissioner's decision is affirmed:

**Procedural History**

Jill filed an application for DIB in August 2015, alleging a disability onset date of April 15, 2015. (Administrative Record ("A.R.") 15, 172-73.) Her application was denied initially and upon reconsideration at the administrative level. (Id. at 15, 63-67, 69-74.) Jill then sought and was granted a hearing before an Administrative Law Judge ("ALJ"). (Id. at 15, 87-88, 106-10, 131-32.) Jill appeared with her attorney and

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Jill's first name and last initial in this opinion to protect her privacy to the extent possible.

a vocational expert ("VE") at a November 2017 hearing. (Id. at 15, 27-62.) The ALJ issued a decision in January 2018 finding that Jill is not disabled, (id. at 12-23), and the Appeals Council denied Jill's request for review, (id. at 1-6). Jill then sought judicial review. (Id. at 403-05.) This court granted her first remand request because the ALJ did not adequately account for Jill's mental limitations when assessing her residual functional capacity ("RFC"). *Jill S. v. Saul*, 19 CV 569, Dkt. No. 21 (N.D. Ill. Nov. 21, 2019). This court also held that the ALJ erred by improperly relying on Jill's past work to discount the opinion of Dr. Mary Walsh, Jill's treating psychiatrist, and not discussing the applicable regulatory factors. *Id.*

On remand, Jill appeared with her attorney at a telephonic hearing before a new ALJ in February 2021 and she, Dr. Michael Carney (a psychologist serving as a medical expert), and a VE testified. (A.R. 293-350.) The ALJ then reached the same conclusion as the first ALJ that Jill is not disabled. (Id. at 270-86.) Jill again seeks judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 12).

## Analysis

Jill brings the same arguments as before, claiming the ALJ: (1) failed to account for her mental limitations in the RFC assessment; and (2) improperly rejected the opinion of her treating psychiatrist, Dr. Walsh. (R. 17, Pl.'s Mem. at 9-15.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which

is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ must "provide a logical bridge between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (internal quotation and citation omitted). Put another way, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). "All [that is] require[d] is that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow [the] reviewing court, to assess the validity of the agency's ultimate findings and afford [Plaintiff] meaningful judicial review.'" *Warnell v. O'Malley*, 97 Fed.4th 1050, 1054 (7th Cir. 2024). Having considered the arguments and record, the court concludes that remand is not warranted.

**A. Opinion Evidence**

The court begins with the ALJ's analysis of Dr. Walsh's opinion because any error in this regard would require a reexamination of the RFC. Jill argues that the ALJ "failed to provide any legitimate or cogent support" for failing to give controlling weight to Dr. Walsh's January 14, 2017 medical source statement. (R. 21, Pl.'s Mem. at 14.) The government responds that the ALJ "addressed every regulatory factor in

connection with Dr. Walsh's opinion" and "reasonably concluded that it was not persuasive." (R. 24, Govt's Mem. at 8.)

A treating source's opinion in cases filed before March 27, 2017, is entitled to "controlling weight" if it is "well-supported" by medical evidence and "not inconsistent with the other substantial evidence." *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). However, an ALJ may "give less weight to a treating source's opinion if it is inconsistent with the record." *Rainey v. Berryhill*, 731 Fed. Appx. 519, 523 (7th Cir. 2018) (citation omitted). If a treating physician's opinion is not given controlling weight, the ALJ must determine what weight to give the opinion by analyzing the following factors: (1) length of treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other factors "which tend to support or contradict the medical opinion." 20 C.F.R. § 404.1527(c).

The court concludes that the ALJ supported her decision with substantial evidence. On January 14, 2017, Dr. Walsh completed a medical statement opining that Jill has marked limitations in: remembering locations and work-like procedures; understanding and remembering very short and simple instructions; carrying out detailed instructions; maintaining attention and concentration for long periods; working in coordination with or proximity to others without being unduly distracted; completing a normal workday and workweek without interruptions from mental symptoms; and performing at a consistent pace without an unreasonable number and length of rest periods. (A.R. 212-13.)

When assessing Dr. Walsh's opinion and affording it "little weight," the ALJ discussed each regulatory factor but focused largely on three factors—the treating relationship, supportability, and consistency. First, the ALJ recognized Jill and Dr. Walsh's long treatment history but noted "significant breaks in that treatment." (Id. at 283; see also id. at 973 (visit in October 2017), 981 (next visit in October 2018).) Second, the ALJ pointed to Dr. Walsh's treatment notes, which did not support her opinion that Jill suffered from work-preclusive or marked limitations. These notes include Dr. Walsh's remark that Jill had a "logical" thought process and exhibited "tangentiality" only "at times." (Id.) The ALJ noted that a lack of supportability is particularly apparent when looking at the treatment notes from visits preceding Dr. Walsh's January 2017 medical statement. (Id. (citing id. at 945 (noting Jill had logical thought process in January 2015), 947 (same in June 2015), 955 (same in October 2016), 957 (same in November 2016), 959 (same in December 2016), 961 (same in January 2017)); but see id. at 949 (noting tangential thought at times in August 2015), 951 (same in October 2015); 953 (same in July 2016).)

As to attention and concentration, the ALJ noted that the treatment records reflect Jill's reports rather than Dr. Walsh's own observations or any objective testing. (Id. at 283 (citing id. at 949 (August 2015 visit noting Jill expressed worry about attention problems), 956 (October 2016 visit noting Jill "reports difficulty remembering details"), 965 (April 2017 visit noting Jill complained of cognitive difficulties).) It was within the ALJ's discretion to discount opinions based on subjective reports. *See Ghiselli v. Colvin*, 837 F.3d 771, 776-77 (7th Cir. 2016)

5

(finding no error where ALJ discounted medical opinion based on claimant's subjective symptom allegations). Further, a December 2015 psychological consultative examination found Jill's "capacity for understanding and memory" to be intact. (Id. at 279-80 (citing id. at 203-04); but see id. at 203 (exam finding that Jill's immediate memory impaired based on mistakes made on "Forward and Backward" test)).)

Third, the ALJ criticized Dr. Walsh's opinion for being "inconsistent with the entire record, which supports no more than moderate limitation in any area of mental functioning." (Id. at 284); see Gibson v. Massanari, 18 Fed. Appx. 420, 425 (7th Cir. 2001) (inconsistencies internally or with other evidence are good cause for rejecting medical evidence). Jill argues that Dr. Walsh's opinion was consistent with the record, relying on this court's 2019 opinion remanding the case. (R. 17, Pl.'s Mem. at 12-13.) The government responds that the ALJ properly discounted Dr. Walsh's treatment notes which could be viewed as consistent because she explained—and the medical expert testified to—the fact that the supporting medical notes appeared to be a recitation of Jill's subjective reporting. (R. 24, Govt's Mem. at 8-9; see also A.R. 304 (medical expert Dr. Carney testifying that Dr. Walsh is "writing down what the claimant's just reporting.").)[2]

---

[2] The government correctly points out that Jill fails to challenge the ALJ's assessment of her subjective reports. (R. 24, Govt's Mem. at n.2.) The court agrees. Because Jill does not argue that the ALJ improperly discounted her subjective reports, she forfeits this argument. Underwood v. Saul, 805 Fed. Appx. 403, 406 (7th Cir. 2020) (finding argument waived). Regardless, an ALJ is permitted to discount opinions that rely heavily on subjective reports without objective support. See Hinds v. Saul, 799 Fed. Appx. 396, 400 (7th Cir. 2020).

The ALJ also briefly addressed the other three regulatory factors in her assessment, recognizing that Dr. Walsh specializes in adult psychiatry and mood disorders and provided Jill with medication management. (A.R. 283-84.) The ALJ noted, however, that Jill terminated her treating relationship with Dr. Walsh because of "lack of benefit," "unwillingness to adjust medication," and "lack of locational proximity." (Id. at 284.) The ALJ also considered "other factors," including no adjustments to Jill's medication, which the ALJ deemed inconsistent with the marked limitations Dr. Walsh assessed in her opinion. (Id.) The court cannot reweigh evidence and must defer to the ALJ, asking only whether she applied the proper legal standards and if a "reasonable mind might accept" the evidence as adequate to support a conclusion. *Biestek*, 139 S. Ct. at 1154 (quotation and citations omitted). And the Seventh Circuit recently affirmed that ALJs "are subject to only the most minimal of articulation requirements." *Warnell*, 97 F.4th at 1053. The ALJ met that minimal standard here and adequately explained why she afforded Dr. Walsh's opinion "little weight." (A.R. 283-84.)

While Jill focuses her argument on Dr. Walsh, she also takes issue with the ALJ's reliance on medical expert Dr. Carney's opinion. However, this argument is unavailing because an ALJ may obtain and rely upon a medical expert's opinion for many reasons, including "to clarify and explain the evidence or help resolve a conflict because the medical evidence is contradictory, inconsistent, or confusing, and to determine the claimant's residual functioning capacity." *Apke v. Saul*, 817 Fed. Appx. 252, 255-57 (7th Cir. 2020) (quotation omitted). Here, the ALJ explained that

Dr. Carney, serving as a medical expert, reviewed the entire medical record beyond Dr. Walsh's January 2017 opinion—which was submitted about four years before the second hearing in February 2021. (A.R. 282-83.) While Jill argues that Dr. Carney's testimony was "equivocal," (R. 19, Pl.'s Mem. at 10, 15), the court disagrees. For example, Dr. Carney testified that Dr. Walsh appears to have written down Jill's reports and that Jill's primary doctor, Dr. Jenny Lee, found Jill's psychological and neurological observations within normal limits, (see A.R. 303-05). Because the ALJ's reliance on Dr. Carney's testimony was not "patently wrong," the court finds no error. *Apke*, 817 Fed. Appx. at 257.

## B.    RFC

Jill argues that the ALJ failed to account for her mental limitations when assessing her RFC, repeating the same error made by the previous ALJ who ignored documented limitations. (R. 19, Pl.'s Mem. at 9-14.) The government responds that Jill's argument is primarily a challenge to the ALJ's reliance on Dr. Carney and that the ALJ reasonably accommodated her mental limitations. (R. 24, Govt's Mem. at 10-14.) An RFC measures the tasks a person can perform given her limitations based on "all the relevant evidence" in the record. 20 C.F.R. § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). The ALJ "must incorporate a claimant's limitations," including those that are not severe, when developing the RFC. *See Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020); *see also Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (finding that when assessing RFC, ALJ must "evaluate

8

all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling").

After evaluating Jill's "paragraph B" criteria and determining that she had no more than a moderate limitation in all four areas of functioning, the ALJ concluded that Jill could perform a full range of work at all exertional levels, but with respect to non-exertional limitations, she could:

> understand, remember, and carry out instructions for simple, routine, repetitive tasks, with sufficient persistence, concentration, or pace, to timely and appropriately complete such tasks; no fast-paced production rate or strict quota requirements, but [could] meet end of day requirements . . . make simple work-related decisions, and adapt to routine work place changes; [and have] occasional contact with co-workers, supervisors, and the general public, and no problem solving tasks with the general public.

(A.R. 278.) In so defining Jill's RFC, the ALJ evaluated the record evidence and her testimony, and concluded that her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Id. at 279.) As noted above, the ALJ discounted Dr. Walsh's opinion and afforded more weight to medical expert Dr. Carney. During the administrative hearing, the ALJ asked Dr. Carney if he would alter anything about the limitations the ALJ ultimately assessed for Jill and Dr. Carney responded that he would not. (Id. at 314-16.) The ALJ was entitled to rely on this testimony when assessing the severity of Jill's symptom statements.

The ALJ also acknowledged Jill's daily activities but did not use them to conclude that she could work a full-time job, as Jill argues, but rather to assess the credibility of her statements concerning her mental functioning and their impact. (Id.

at 276-77); *see Burmester*, 920 F.3d at 510-11. Further, to the extent Jill contends that restrictions to "simple, routine, repetitive tasks," "no fast-paced production rate or strict quota requirements," and "simple work-related decisions" are insufficient to accommodate her moderate difficulty maintaining attention and concentration, (R. 17, Pl.'s Mem. at 12-13), "the general rule" that such restrictions may be inadequate does not apply here, where the ALJ relied on a medical expert's opinion. *Benjamin G. v. Kijakazi*, No. 19 CV 4558, 2022 WL 2208865, at *6 (N.D. Ill. June 21, 2022) (citing *Burmester*, 920 F.3d at 511). And even if the ALJ's RFC were flawed, any error is harmless because Jill did not propose any work restrictions addressing her mental functioning. *Jozefyk v. Berryhill*, 923 F.3d at 498 ("It is unclear what kinds of work restrictions might address [claimant's] limitations in concentration, persistence, or pace because [the claimant] hypothesizes none.").

## Conclusion

For the foregoing reasons, Jill's remand request is denied, and the Commissioner's final decision is affirmed.

ENTER:

Young B. Kim
United States Magistrate